# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KING MWASI,<br><br>   Plaintiff,<br><br>   v.<br><br>SHITTU, *et al.*,<br><br>   Defendants. | No. 1:23-cv-00364-ADA-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT THE FEDERAL CLAIMS BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM AND THE COURT DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS<br><br>(Doc. 12)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff King Mwasi is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and he was granted leave to amend. Plaintiff's first amended complaint is currently before the Court for screening. (ECF No. 12.)

**I.      Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at San Quentin State Prison. Plaintiff alleges that the events in the first amended complaint occurred while he was housed at North Kern State Prison ("NKSP"). Plaintiff names as defendants: (1) Dr. Adekunle Shittu, Chief Physician and surgeon, (2) J. Jeter, Associate Warden, (3) Ted Kubicki, Medical CEO, and (4) Fite-Barker, RN, (5) Does 1-10, (6) North Kern State Prison, (7) California Department of Corrections and Rehabilitation, (8) Dr. James Chau, doctor, (9) Dr. Amen Zenahly, dentist, (10) RN Etrata, optometrist RN, (11) Guard Marquez, (12) Janet Meda, DNP-FNP-C, and (13) B. Johnson, CCII, 602 coordinator.

On 5/24/18, Plaintiff was transferred to NKSP. At Plaintiff's previous facility, Plaintiff was a CCP (chronic care patient) with various severe and serious medical conditions such as hearing and speech defects, orthopedic issues, painful injuries to ankles, nerve damage, hip, knee and shoulder pain, among other issues. Pursuant to *Plata v. Newsom*, when transferring between prisons, the receiving prison is supposed to continue the same care, appointments, and specialists.

Throughout Plaintiff's stay at NKSP (5/24/18 through August 2019), Defendants violated the decree including by Defendant Shittu and Kubicki.

Plaintiff alleges that a wide-spread conspiracy to deny medical care existed among all the defendants who knowingly committed deliberate acts of misconduct which violated Plaintiff's rights. Plaintiff was retaliated against when he filed complaints and medical care worsened.

Problems started when Plaintiff arrived at NKSP because of discrepancies involving Plaintiff's hearing impairment. NKSP is not designated as a prison for hearing impaired and no special accommodations are made. Staff does not have experience with this disability. Inmates use methods to communicate with Plaintiff, like speaking slowly, using hand signals, write notes, etc. Staff observing these interactions think Plaintiff can understand okay.

About a week after his arrival at NKSP, Plaintiff was trying to communicate with an inmate he knew. Defendant Fite-Barker and an unknown staff misinterpreted what they were observing about Plaintiff and called Kubicki who also watched Plaintiff. Kubicki concluded, based on that flawed perception, Plaintiff could hear. He started telling staff not to accommodate Plaintiff.

Plaintiff was unaware of this conspiracy for several months. Plaintiff learned that the sign language interpreter was instructed to rescind Plaintiff's hearing impaired status, and Dr. James Chou was also told the same. From then on, staff had "license" to abuse Plaintiff based on the erroneous observations of Plaintiff. Once this started, the lie took a life of its own, and all Defendants blindly followed. "Defendant their erroneous perceptions to commit civil rights violations, clouding medical judgments and ultimately deny medical care to Plaintiff." Plaintiff was denied treatment and "ADA" accommodation.

In claim 1, Plaintiff alleges violations of the First, Fourth, Eighth, and Fourteenth Amendments, and state torts for intentional torts, negligence, intentional infliction of emotional distress, and ADA violations. Plaintiff alleges as follows.

Plaintiff alleges Defendants denied ADA accommodations for his hearing disability simply because they did not believe or understand his symptoms. Defendant NKSP and CDCR were aware of Plaintiff's disability yet did not transfer him to a hearing impaired medical facility.

1  Defendant Fite-Barker, Kubicki and others erroneously made wildly false conclusions that
2  Plaintiff did not have any disabilities and spread disinformation to not accommodate Plaintiff's
3  disability.  There were documented records by a neurologist and an MRI and EKG showing brain
4  damage.
5        On 6/6/18, Defendants Barker, Kubicki, and others made an observation of Plaintiff from
6  over 40 yards away and made false and impossible conclusions about whether Plaintiff could
7  hear.  On 8/2/18, Defendant was brought by Defendant Marquez to the transportation area to be
8  brought to a neurologist appointment.  Marquez told escorting guards Sotelo and Hernandez-
9  Reyes the misinformation by Kubicki about Plaintiff's ability to hear.  Plaintiff was escorted to a
10 neurologist appointment by guards Sotelo and M. Hernandez-Reyes.  At the appointment, the
11 guards heard the doctor say that the part of Plaintiff's brain is dead which deals with language.
12 The guards told the doctor about the misinformation circulated by Kubicki and the doctor
13 disagreed with this based on medical evidence.
14       On 8/3/18, the RN refused to write to communicate.
15       On 8/22/18, Dr. Chau denied Plaintiff's medically needed cervical pillow, orthopedic
16 shoes, and insoles, despite specialist orders because of the conspiracy.
17       On 9/21/18 DNP-FNP-C Janet Meda refused to write to communicate and to provide
18 medical care.
19       At a neurologist appointment escorted by D. Salcido and M. Garcia, the neurologist told
20 them about the brain damage from a stroke.  The guards agreed that the misinformation about
21 Plaintiff hearing needed to be corrected, but nothing was done.
22       On 11/14/18, Dr. Ukiomogge wrote to Plaintiff that management (Shittu and Kubicki)
23 refused all efforts and care for Plaintiff because of the misinformation and the doctor said he
24 would go to management to advocate for Plaintiff, but to no avail.
25       On 11/30/18, in a 602 interview after Plaintiff had been assaulted, the interviewer showed
26 Plaintiff a note from the 602 coordinator CCII Johnson saying that Plaintiff has no disability.
27       On 12/12/18, Dr. Ukiomogge ordered a hearing aid, but Shittu stopped that again.
28       On 1/4/19, at a 602 interview about Plaintiff's hearing, the 602 coordinator Johnson

refused to write for communication with Plaintiff.

On 1/17/19, for a second time, Shittu was present at an audio appointment to interfere and instruct the audiologist to falsify report. Test results were consistent with ENT test, but audiologist wrote a report inconsistent with actual test findings.

On 1/18/19, Janet Meda scanned Plaintiff's list of medical complaints, did not act on them, and refused to write to communicate.

On 2/20/19, dentist Dr. Zendahly wrote "Kubicki called and said you <u>can</u> hear and speak so will not give treatment unless you talk normal."

On 6/4/18, at direction of Shittu, Dr. Chau denied order for cervical pillow for degenerative neck injury and orthopedic shores.

On 6/8/18, at the direction of Shittu and Kubicki, Dr. Chau rescinded the hearing impairment designations.

On 2/27/19, Dr. Ukiomogge refused to make a referral to a specialist and podiatrist, dermatologist, hearing aid, neck, ortho surgeon or feet ankles, shoulders saying that Shittu will overrule it.

On 3/26/23,[1] 5/30/19, and 6/26/19, Dr. Ukiomogge wrote Shittu who continues to overrule his orders for care.

On 6/20/19, Dentist Zenahly refused to write and there was no communication about dental care.

On 6/21/18, 10/1/18, 10/26/18, 1/17/19 and 6/18/19, RN Entrata always refused to write to communicate with Plaintiff and disregarded Plaintiff's notes, resulting in denial of medical care.

Plaintiff seeks a declaratory judgment that his rights have been violated and seeks compensatory damages and punitive damages.

**III.    Discussion**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20

---

[1] This date may be an error because all events in the first amended complaint occurred in 2018-2019.

and fails to state a cognizable claim under 42 U.S.C. § 1983.

### A.  Federal Rule of Civil Procedure 8 and Linkage

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitalas of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Here, Plaintiff's complaint is relatively short, but it is not a plain statement of his claims showing that he is entitled to relief. In many of the incidents, Plaintiff's allegations are conclusory and do not state factual support about Plaintiff's complaint such as how Plaintiff knew certain people influenced medical appointments or medical care. Plaintiff's conclusory allegations what happened, when it happened, or which defendant was involved are insufficient. Further, Plaintiff continues to refer to "defendants" as violating his rights and does not specify which defendant, although he references some specific defendants for certain incidents.

In addition, Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). Plaintiff fails to link Defendant Jeter to any purported constitutional violation. Plaintiff may not simply assert that a deprivation occurred and then accuse a group of defendants of being "responsible" for that deprivation.

### B.  Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021).

Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. As Plaintiff was advised in the Court's screening order, Plaintiff may not claim every medical violation from 2018 through August 2019. Plaintiff lists every apparent medical appointment he has had with various defendants. Merely because Plaintiff was housed at North Kern State Prison when the incidents occurred, and they involve medical care, does not make every injury or incident related. Plaintiff appears to assert unrelated claims, such as denial of pillow, orthopedic shoes, denial of medication, ADA violations, knee, shoulder and hip pain, hearing impairment and many more. These matters are unrelated and must be brought in separate actions. As Plaintiff is attempting to bring multiple claims that arose from different and unrelated occurrences, his complaint violates Federal Rules of Civil Procedure 18 and 20.

**C. Supervisory Liability**

To the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *accord Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16

(9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### D. Eleventh Amendment

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Therefore, Plaintiff cannot pursue claims for damages against the State, CDCR, or KVSP in this action.

### E. Eighth Amendment – Medical Care

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

8

1   to treat a prisoner's condition could result in further significant injury or the 'unnecessary and
2   wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately
3   indifferent." *Jett*, 439 F.3d at 1096.

4         A defendant does not act in a deliberately indifferent manner unless the defendant "knows
5   of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825,
6   837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609
7   F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is
8   shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible
9   medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this
10  standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have
11  been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,'
12  'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter*
13  *Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross
14  negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood*
15  *v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

16        Further, a "difference of opinion between a physician and the prisoner—or between
17  medical professionals—concerning what medical care is appropriate does not amount to
18  deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v.*
19  *Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*,
20  744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir.
21  2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must
22  show that the course of treatment the doctors chose was medically unacceptable under the
23  circumstances and that the defendants chose this course in conscious disregard of an excessive
24  risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation
25  marks omitted).

26        Plaintiff alleges various different kinds of denial of medical care, and as noted above,
27  Plaintiff has improperly joined multiple alleged deliberate indifference incidents in this action. He
28  has unrelated claims for failure to provide a neck pillow, orthopedic shoes, insoles, dental

1  medication, proper disability characterization, care for pain in his hip, knee and shoulder and
2  failure to properly communicate and many other complaints which occurred over a year time
3  period.  Each of the incidents involve different medical providers and correctional personnel.
4  Separate incidents must be brought in separate actions.  As stated above, he may not improperly
5  join unrelated claims.

6  Further, Plaintiff fails to state a claim regarding his medical care. Plaintiff's disagreement
7  with Defendants or any other healthcare providers regarding his diagnosis, medical classification,
8  or the manner in which they enter notes in his file are not sufficient to show deliberate
9  indifference to serious medical needs.  A prisoner's disagreement with a physician's treatment or
10  diagnosis does not support a claim of deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240,
11  242 (9th Cir. 1989).

12  In addition, even if the Court accepts Plaintiff's conclusory allegations that Shittu and
13  Kubicki interfered with medical care, Plaintiff has not alleged facts that plausibly show that Shittu
14  and Kubicki satisfied the subjective component of deliberate indifference: each Defendants
15  "knows of and disregards an excessive risk to inmate health or safety."  Indeed, Plaintiff alleges
16  that Shittu and Kubicki did not believe that Plaintiff was hearing impaired, and thus not in need of
17  treatment. Furthermore, Plaintiff has not shown that any harm resulted from any Defendants'
18  actions or lack of actions. There is no allegation that any purported indifference caused
19  harm. *Jett*, 439 F.3d at 1096 (the indifference must have caused harm).  Plaintiff has been unable
20  to cure this deficiency.

21  **F.  Americans with Disabilities Act and Rehabilitation Act ("ADA")**

22  The ADA provides, "no qualified individual with a disability shall, by reason of such
23  disability, be excluded from participation in or be denied the benefits of the services, programs, or
24  activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §
25  12132. The ADA defines "qualified individual with a disability" as "an individual with a
26  disability who, with or without reasonable modifications to rules, policies, or practices, the
27  removal of architectural, communication, or transportation barriers, or the provision of auxiliary
28  aids and services, meets the essential eligibility requirements for the receipt of services or the

participation in programs or activities provided by a public entity." *Id.* § 12131(2).

To the extent Plaintiff intends to sue the individually named defendants for violation of his rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). The proper defendant in ADA actions is the public entity responsible for the alleged discrimination. *U.S. v. Georgia*, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dep't. of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

In order to state a claim under the ADA, the plaintiff must have been "improperly excluded from participation in, and denied the benefit of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong*, 124 F.3d at 1023. Plaintiff has alleged no facts demonstrating such exclusion or denial. Plaintiff also does not allege that any of his illnesses led to an exclusion or denial of a prison service, program, or activity. Further, Plaintiff's allegations of inadequate medical care do not state a claim under the ADA. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); *see also Simmons*, 609 F.3d at 1022 (Inadequate or negligent medical treatment alone does not constitute an unlawful failure to accommodate under the ADA or the Rehabilitation Act.).

**G.     Conspiracy**

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir.2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001). To have standing to bring this type of claim, Plaintiff must also allege he suffered an actual injury. *Vandelft v. Moses*, 31 F.3d 794, 798 (9th Cir. 1994). To establish a conspiracy, Plaintiff allege specific facts showing "an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and

1  quotation marks omitted). The mere conclusory statement that defendants "conspired" together is
2  not sufficient to state a cognizable claim. *Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th
3  Cir. 1989).
4      Plaintiff makes general, omnibus allegations that the Defendants, in doing the myriad of
5  acts alleged, were doing so in the furtherance of some conspiracy. Plaintiff must plead the basic
6  elements of a civil conspiracy: an agreement and concerted action amongst the defendants in the
7  furtherance of that agreement, and that each defendant conspired to violate Plaintiff's
8  constitutional rights. *See also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)
9  (noting that a bare allegation of a conspiracy is almost impossible to defend against where
10 numerous individuals are concerned).

11     **H.    Consent Decree**
12     Plaintiff alleges the actions of the defendants did not conform to the consent decree in
13 *Plata v. Newsom*.
14     It is well-settled that the remedial order issued in *Plata* and related cases do not provide an
15 independent cause of action under § 1983 as the order does not create or expand on a plaintiff's
16 constitutional rights. *Coleman v. CDCR*, No. 09-cv-02192-SKO PC, 2011 WL 2619569, at *4
17 (E.D. Cal. July 1, 2011) (citing *Cagle v. Sutherland*, 334 F.3d 980, 986-87 (9th Cir. 2003)
18 (consent decrees often go beyond constitutional minimum requirements, and do not create or
19 expand rights)); *see also Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial
20 decrees remedy constitutional violations but do not create or enlarge constitutional rights and
21 cannot serve as a substantive basis for damages); *Montecastro v. Newsom*, No. 1:20-CV-00689
22 SAB(PC), 2020 WL 6484097, at *5 (E.D. Cal. Nov. 4, 2020) ("[A]ny violations of the remedial
23 plan developed in Armstrong do not provide an independent basis for relief in this court.
24 Violations of the Armstrong Remedial Plan must be addressed through the procedures provided
25 by that plan."), report and recommendation adopted, No. 1:20-CV-00689 NONE SAB (PC), 2020
26 WL 7319423 (E.D. Cal. Dec. 11, 2020). If Plaintiff has concerns about the actions under the
27 Plata/Armstrong/Coleman consent decrees, he should express those concerns to the class
28 representative or court in those cases.

### I. Title 15 and Policy Violation

To the extent that any Defendant has not complied with applicable state statutes or prison regulations for failure to follow procedures, these deprivations do not support a claim under §1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (same).

### J. Housing Assignment

Any claim premised on the Defendants' alleged failure to house Plaintiff at a particular institution or in particular housing fails because Plaintiff is not entitled to be transferred to any particular prison or to be housed in any particular housing. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompased by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. *Montayne v. Haymes*, 427 U.S. 236, 242 (1976) (It is well settled that prisoners have no constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment.); accord *King v. Lemos,* No. 1:20-CV-01837-NONE-

BAM (PC), 2021 WL 2038187, at *6 (E.D. Cal. May 21, 2021).

### K. False Reports

To the extent Plaintiff alleges that Defendants falsified medical reports against Plaintiff, he cannot state a claim.

The creation of false evidence, standing alone, is not actionable under § 1983. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see also Youngs v. Barretto,* No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment) (citations omitted).

Plaintiff's complaint fails to state a claim based on allegations of a false medical injury report. *Martin v. Pfeiffer*, No. 1:22-CV-00889 AWI BAM PC, 2022 WL 4345686, at *8 (E.D. Cal. Sept. 19, 2022) (no cognizable claim for a false medical report), report and recommendation adopted, No. 1:22-CV-00889 AWI BAM PC, 2022 WL 17406535 (E.D. Cal. Dec. 2, 2022); *Sanford v. Eaton*, No. 1:20-CV-00792 BAM (PC), 2021 WL 1172911, at *7 (E.D. Cal. Mar. 29, 2021)(denying a claim alleging falsified medical report and statements made by Plaintiff), denying to adopt on other grounds, *Sanford v. Eaton*, No. 1:20-CV00792-JLT BAM(PC), 2022 WL 168530, at *2 (E.D. Cal. Jan. 19, 2022).

### L.   State Law Claims

To the extent Plaintiff also alleges violations of California law, Plaintiff is informed that the California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2,

945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1239 (Cal. 2004); *Shirk v. Vista Unified School District*, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; *Bodde*, 32 Cal.4th at 1244. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a complaint to general demurrer for failure to state a cause of action." *Bodde*, 32 Cal.4th at 1239.

Plaintiff alleges he has complied with the California Tort Claims Act.

To the extent Plaintiff is attempting to assert state law claims, the Court declines to screen them in the absence of a cognizable claim for relief under federal law. Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367.

**IV.     Conclusion and Recommendation**

As discussed above, the Court finds Plaintiff's first amended complaint fails to comply with Rules 8, 18, and 20, and fails to state a cognizable claim for relief. Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

For the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's federal claims be dismissed with prejudice based on Plaintiff's failure to state a cognizable claim upon which relief may be granted; and

///

      2. The Court decline to exercise supplemental jurisdiction over Plaintiff's purported state law claims.

      These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **September 1, 2023**     /s/ *Barbara A. McAuliffe*
                                                         UNITED STATES MAGISTRATE JUDGE